UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ZACHARY J. BUTCHINO,

                Plaintiff,

    -against-

CITY OF PLATTSBURGH, CHAD WELCH, ADAM
WOOD, JOSHUA POND, KRISTOPHER MINOGUE,
JOEL VASSAR, AND LEVI RITTER, IN THEIR
INDIVIDUAL CAPACITIES,

                Defendants.

---

**MEMORANDUM OF
LAW IN SUPPORT OF
DEFENDANTS' MOTION
PURSUANT TO
FRCP RULE 56**

Index No.: 8:20-CV-796
(MAD/CFH)

## MEMORANDUM OF LAW

Respectfully submitted,

FITZGERALD MORRIS BAKER FIRTH P.C.
By:  John D. Aspland, Jr.
Bar Roll #512134
Attorneys for Defendants
68 Warren Street
P.O. Box 2017
Glens Falls, NY 12801
(518)745-1400

# TABLE OF CONTENTS

Preliminary Statement ...................................................................................................1

Statement of Facts .........................................................................................................1

Argument .......................................................................................................................2

   I.     LEGAL STANDARD FOR SUMMARY JUDGMENT ......................................2

   II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF
        LAW ON PLAINTIFF'S CLAIMS THAT DEFENDANT CITY DEPRIVED HIM
        OF HIS CONSTITUTIONAL RIGHTS PURSUANT TO AN OFFICIAL CUSTOM,
        POLICY, OR PRACTICE OF THE CITY OF PLATTSBURGH BECAUSE
        NO EVIDENCE EXISTS TO SUPPORT SUCH CLAIMS. .......................................3

               A.  Plaintiff cannot prove that the Defendant City of Plattsburgh
                   had a policy, custom, or usage of not requiring its police
                   officers to attempt de-escalation before using force against
                   detainees or arrestees, including with respect to persons
                   experiencing mental health issues ..............................................6

               B.  Plaintiff will be unable to prove that the Defendant City of
                   Plattsburgh had a policy, custom or usage of using
                   excessive force against arrestees and/or detainees ......................8

               C.  Plaintiff will be unable to prove that the Defendant City of
                     Plattsburgh had a policy, custom or usage of allowing its
                     police officers not to intervene to prevent violations of
                     an arrestee or detainee's rights ..................................................9

   III.   PLAINTIFF'S CLAIMS PURSUANT TO THE AMERICANS WITH DISABILITY
        ACT AND REHABILITATION ACT MUST FAIL BECAUSE THE DEFENDANTS
        WERE NOT AWARE THAT MR. BUTCHINO WAS A QUALIFIED INDIVIDUAL
        WITH A DISABILITY .............................................................................................10

   IV.   PLAINTIFF'S EXCESSIVE FORCE CLAIM PURSUANT TO 42USC §1983
        MUST FAIL AS A MATTER OF LAW BECAUSE THE FORCE USED WAS
        OBJECTIVIELY REASONABLE, PROPORTIONAL AND NECESSARY ..........................19

               A.  The force used by Defendant Officer Welch was
                   objectively reasonable in light of the circumstance
                   encountered by Officer Welch at the scene. ...................................20

               B.  The force used by Defendant Officer Wood was objectively
                   reasonable in light of the circumstances encountered by
                   Officer Wood at the scene ..........................................................24

                 C.  Plaintiff did not sufficiently plead, and cannot prove that
                   Defendant Officers Pond, Minogue and Vassar used objectively
                   unreasonable force against Plaintiff ............................................26

i

V.  PLAINTIFF'S CLAIM PURSUANT TO §1983 FOR FAILIURE TO INTERVENE AGAINST ALL INDIVIDUAL DEFENDANTS MUST FAIL AS A MATTER OF LAW ...................................................................................................28

VI.  PLAINTIFF WILL NOT BE ABLE TO OVERCOME DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY ........................................................32

CONCLUSION ...................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

Allaway v. McGinnis, 473 F.Supp.2d 378, 382-83 (WDNY 2007), ............................................ 22

Amnesty Am. v. Town of Hartford., 361 F3d 113, 129 (2d Cir. 2004)........................................ 9

Anthony v. City of New York, 2001 WL 741743 (SDNY Jul. 2, 2001).  ................................... 11

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)...................................................... 2,29

Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...................................................... 26

Bd. of Ct. Comm'rs of Bryan Cty., Okl. V. Brown, 520 U.S. 397, 405, 117 S. Ct. 1382, 1389,
137 L. Ed. 2d 626 (1997) .......................................................................................................... 4

Bell Atlantic v. Twombly, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....................................... 26

Benitez v. Healy, No. 9:15-CV-1179 (GLS/ATB), 2017 WL 9673721, at *5 (NDNY June 7,
2017) ......................................................................................................................................... 3

Brady v. Wal-Mart Stores, Inc., 531 F3d 127, 135 (2d Cir. 2008)............................................. 11

Canton, 489 U.S. 378 ...................................................................................................................... 5

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) ...................................................................... 2

Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984) ............................... 13

Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) ......................... 4

Cusamano v. Sobek, 604 F.Supp.2d 416, 429 (NDNY 2009). ...................................................... 29

Espinal v. Goord, 00 Civ. 2242, 2001 WL 476070 (JP), at *13 (SDNY May 7, 2001) ............... 22

Estate of Jaquez v. City of New York, No. 10-Civ-2881 (KBF), 2014 WL 2696567
SDNY Jun. 9, 2014), ............................................................................................................... 5,7

Felix v. City of New York, 344 F.Supp.3d 644 (SDNY 2018), ........................................... passim

Gebser v. Lago Vista Indep. School Dist., 524 US 274 (1998). .................................................. 16

Gonzaga University v. Doe, 536 U.S. 273 (2002) ......................................................................... 19

Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L. Ed. 3d 443 (1989). ............... 20,35

Green v. Morse, No. 00-CV-6533 (CJS), 2009 WL 1401642, at *9 (WDNY May 18, 2009)....... 3

Henrietta v. Bloomberg, 331 F3d 261, 272 (2d Cir. 2003)............................................................ 10

Hicks v. The City of Syracuse, No. 5:17-CV-0475 (TJM), 2018 WL 6308653,
at *3 (NDNY Dec. 3, 2018), ...................................................................................................... 4

Hilson v. M. Maltese, No. 9:09-CV-1373 (NAM/ATB), 2012 WL 6965105 (NDNY Dec. 14,
2012), .................................................................................................................................... 22,34

Jackson v. Mastrangelo, No. 6:17-CV-06448 (EAW), 405 F.Supp.3d 488 (WDNY 2019), ....... 24

Jenkins v. Medert, No. 9:16-CV-1491 (MAD/DJS) 2018 WL 5728050................................. 27,33

Jones v. Smithkline Beecham Corporation d/b/a Glaxo Smith Kline, 309 F.Supp.2d 343, 349
(NDNY 2004) ............................................................................................................................ 2

Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) ......................................................... 4

Kavanaugh, No. 8:14-CV-01244 (BKS/DJS), 2016 WL 7495813, at *6. ..................................... 5

Local Rule 7.1 ................................................................................................................................. 2

Kerman v. City of New York, 374 F.3d 93, (2d. Cir. 2004)........................................................... 32

Kisela v. Hughes, 138 s. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018), ........................................... 32

Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015), ............................................................. 19

Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995), ..................................................................... 33

iii

Loeffler v. Staten Island University Hospital, 582 F3d 268 (2d Cir. 2009), ................................. 16

Malley v. Briggs, 475 U.S. 335 (1986)........................................................................................ 33

Matsushita Elec. Indus Co. v. Zenith Radio Corp., 475 U.S. 574, 586 & n. 11 (1986) ................. 3

Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L.
Ed. 2d 611 (1978) ......................................................................................................................... 4

Nicholas V. City of Binghamton, No.10-CV-1565(TJM), 2012 WL 3261409 at *13
(NDNY Aug. 8, 2012) ...................................................................................................................11

Outlaw v. City of Hartford, 884 F.3d 351, 372 (2d Cir. 2018)......................................................... 4

Pearson v. Callahan, 555 U.S. 223, S.Ct. 808,(2009) ..................................................................... 32

Plumhoff v. Rickard, 572 U.S. 765,(2014) ................................................................................... 34

Pulliam v. Lilly, No. 07-CV-1243 (SJF/AKT), 2010 WL 935383 (EDNY 2010) ....................... 25

Rivera v. City of Yonkers, 470 F. Supp. 2d 402 (SDNY 2007), ....................................................34

Rodriguez v. Phillips, 66 F.3d 470, 476 (2d Cir. 1995)................................................................33

Sanders v. Torres, No. 9:19-CV-697 (GTS/CFH), 2021 WL 799263, *14
(NDNY Feb. 8, 2021) ...............................................................................................................3,29

Saucier v. Katz, 533 U.S. 194 (2001) ........................................................................................... 32

Scott v. Harris, 550 U.S. 372, 380 (2007)...................................................................................... 3

Sheehan v. City and County of San Francisco, 743 F.3d 1211 (9th Cir. 2014)............................ 14

Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) ..................................................... 2

Stephenson v. Doe, 332 F3d 68, 77 (2d Cir. 2003), ..................................................................... 32

Tardif v. City of New York, No. 19-1360, 2021 WL 1030973
(2d Cir. Mar. 18, 2021). ...........................................................................................................17

Tieman v. City of Newburgh, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *13 (SDNY
2015) ............................................................................................................................................ 8

Veline Hicks, Plaintiff, v. The City of Syracuse, Police Officer David Craw shield #0258, &
    Police Officer David Hart shield #0149, sued herein in their capacity as individuals,
    Defendants, No. 5:17-CV-0475, 2018 WL 6308653, at *3 (NDNY Dec. 3, 2018) .................. 5

Viera v. City of New York, 15 Civ. 5430 (PGG), 2018 WL 4762257 .........................................16
 (SDNY Sept. 30, 2018)

White v. Paul, 137 S.Ct. 548,(2017) ......................................................................................32,33

Wrav v.. City of New York, 974 F.2d 293(2d Cir. 1992)..................................................................6

Young v. Cnty. of Fulton, 160 F.3d 899, 903 (2d Cir. 1998). .......................................................34

## PRELIMINARY STATEMENT

Defendants, the City of Plattsburgh (hereinafter "City"), Officer Chad Welch (hereinafter "Officer Welch"), Officer Adam Wood (hereinafter "Officer Wood"), Corporal Joshua Pond (hereinafter "Corporal Pond"), Officer Kristopher Minogue (hereinafter "Officer Minogue"), Sergeant Joel Vassar (hereinafter "Sergeant Vassar"), and Chief Levi Ritter (hereinafter "Chief Ritter"), (collectively "Defendant Officers"), by and through their attorneys FitzGerald Morris Baker Firth, P.C. submit this Memorandum of Law in support of their post-discovery Motion for Complete Summary Judgment dismissing Plaintiff's Complaint and awarding Defendants costs, disbursements and reasonable attorney's fees and for such further relief as the Court deems just and proper.

As reflected by the Complaint, all claims asserted by Plaintiff arise out of the events that transpired the night of August 19, 2017, when following his arrest for assault, the Defendant Officers took action to prevent Plaintiff's suicide attempt while in a holding cell in the Plattsburgh Police Department. Plaintiff's Federal claims sound in excessive force, failure to intervene, as well as a Monell claim against the City, in addition to claims pursuant to the Americans with Disabilities Act and Rehabilitation Act.

As demonstrated herein, the evidence before this Court – including video evidence of the altercation and Plaintiff's own testimony – makes clear that Plaintiff cannot establish that he was discriminated against on the basis of his disability, or that any of the Defendants violated his constitutional rights. Moreover, as a matter of law, Defendants are entitled to qualified immunity from suit. Furthermore, Plaintiff's claim against the City is barred by the Monell doctrine.

## STATEMENT OF FACTS

The extensive Local Rule 7.1 Statement of Material Facts accompanying this motion sets

1

forth facts, with citations to the corresponding exhibits, which Plaintiff has expressly admitted as well as facts that have been established by evidence that Plaintiff does not and/or cannot dispute with any evidence. The facts from Defendants' L.R. 56.1(a) Statement are incorporated herein by reference.

**ARGUMENT**

## I.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil procedure ("FRCP") requires summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). This "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party argues demonstrates the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the movant establishes a prima facie basis for summary judgment, the burden shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Jones v. Smithkline Beecham Corporation d/b/a Glaxo Smith Kline, 309 F.Supp.2d 343, 349 (NDNY 2004).

In other words, the non-moving party can only defeat a motion for summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." Spinelli v. City of New

2

York, 579 F.3d 160, 166 (2d Cir. 2009). Finally, the non-moving party must do more than "rest upon the mere allegations...of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus Co. v. Zenith Radio Corp., 475 U.S. 574, 586 & n. 11 (1986).

To resolve any disparity between Plaintiff's and Defendants' accounts of the August 19, 2017 use of force, the Court may rely on the video evidence available in this case. "When appropriate, the court may rely on such video evidence to determine whether defendants are entitled to summary judgment." Sanders v. Torres, No. 9:19-CV-697 (GTS/CFH), 2021 WL 799263, *14 (NDNY Feb. 8, 2021), report and recommendation adopted, No. 9:19-CV-0697 (GTS/CFH), 2021 WL 979014, citing, Benitez v. Healy, No. 9:15-CV-1179 (GLS/ATB), 2017 WL 9673721, at *5 (NDNY June 7, 2017). Furthermore where, as here, the video "blatantly contradicts" the non-movants version of events, video evidence can properly be considered on summary judgment and may be credited over a non-movant's account. Sanders v. Torres *14, citing, Scott v. Harris, 550 U.S. 372, 380 (2007). In the context of excessive force, "the court may rely on video evidence clearly showing that some use of force was necessary to grant summary judgment and dismiss a plaintiff's excessive force claim." Sanders v. Torres *14, citing, Green v. Morse, No. 00-CV-6533 (CJS), 2009 WL 1401642, at *9 (WDNY May 18, 2009).

**II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIMS THAT DEFENDANT CITY DEPRIVED HIM OF HIS CONSTITUTIONAL RIGHTS PURSUANT TO AN OFFICIAL CUSTOM, POLICY, OR PRACTICE OF THE CITY OF PLATTSBURGH BECAUSE NO EVIDENCE EXISTS TO SUPPORT SUCH CLAIMS.**

3

It is well settled that a municipality cannot be held liable under 42 U.S.C. §1983 pursuant to a theory of *respondeat superior*. Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "Plaintiffs who seek to impose liability on local governments under §1983 must prove, *inter alia*, that the individuals who violated their federal rights took 'action pursuant to official municipal policy'." Outlaw v. City of Hartford, 884 F.3d 351, 372 (2d Cir. 2018), citing, Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis of the tort of its employee. Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012). It follows, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bd. of Ct. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 405, 117 S. Ct. 1382, 1389, 137 L. Ed. 2d 626 (1997). Even if a plaintiff may have "...suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." Id.

A municipal policy or custom can be established by:

"(1) a formal policy, officially promulgated by the municipality, (citation omitted); (2) action taken by the official responsible for establishing policy with respect to a particular issue, (citation omitted); (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, (citation omitted); or (4) a failure to train, supervise, or discipline that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. (citation omitted)."

Hicks v. The City of Syracuse, No. 5:17-CV-0475 (TJM), 2018 WL 6308653, at *3 (NDNY Dec. 3, 2018), citing, Kavanaugh, No. 8:14-CV-01244 (BKS/DJS), 2016 WL 7495813, at *6.

4

Although Plaintiff's claims are addressed in detail below, it is the case for all of Plaintiff's claims pursuant to a municipal liability theory, that such municipal policies or customs do not exist. Plaintiff has failed to adduce evidence which demonstrates any of the municipal policies that Plaintiff alleges exist. First, the record is bereft of any formal policies, officially promulgated by the City of Plattsburgh relating to the alleged violation of any of Plaintiff's Constitutional rights. Second, the record contains no evidence of any action taken by the official responsible for establishing policy with respect to the actions of the Defendant Officers. Third, the record contains no evidence of past unlawful practices of subordinate officials "so permanent and widespread" as to have the force of law. Fourth, there is no evidence that the City has failed to train, supervise, or discipline the defendant Officers to an extent which amounts to "deliberate indifference" to the rights of Plaintiff. See, Canton, 489 U.S. 378.

Further, Plaintiff is required to "establish not only that the purported failure to train occurred under circumstances that constitute deliberate indifference, but also plaintiffs must identify a specific deficiency in the municipality's training program and establish that the deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation." Amnesty Am. v. Town of Hartford., 361 F3d 113, 129 (2d Cir. 2004).

Additionally, "to make out a deliberate indifference for failure to train claim, plaintiff must allege:

> (1) the "policymaker knows 'to a moral certainty' that her employees will confront a given situation," (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Estate of Jaquez by the Public Administrator of Bronx County v. City of New York, No. 10 Civ. 2881 (KBF), 2014 WL 2696567, *5

(SDNY Jun. 9, 2014), <u>citing</u>, <u>Wrav v. City of New York</u>, 974 F.2d 293, 297-98
(2d Cir. 1992).

Therefore, Mr. Butchino must show, through the use of admissible evidence, that: (1) the
City knew to a moral certainty that the City Police Officers would confront situations where an
individual voluntarily overindulges in an alcoholic substance and becomes belligerently
intoxicated, assaults a random person, is untruthful during the Suicide Prevention Screening
Guidelines questionnaire, attempts to commit suicide, refuses to hand over the means by which
he attempted suicide, becomes aggressive with Officers, and requires the use of force to remove
the article of clothing that was used in the suicide attempt; (2) the Defendant Officers faced a
"difficult choice" and that training or supervision would make the choice to use force to remove
the means by which a pre-trial detainee attempted suicide easier; and (3) wrong choices in
responding to a pre-trial detainee's suicide attempt would frequently cause the deprivation of the
arrestee's Constitutional rights.

> **A.**    **Plaintiff cannot prove that the Defendant City of Plattsburgh had a policy,
> custom, or usage of not requiring its police officers to attempt de-escalation
> before using force against detainees or arrestees, including with respect to
> persons experiencing mental health issues.**

It is likely that Plaintiff will argue that there is evidence in the record which represents a
failure to train or supervise which amounts to deliberate indifference to his Constitutional rights,
Plaintiff's <u>Monell</u> claim still fails. Neither the testimony of the Defendant Officers, nor any of
the other evidence adduced during discovery reflects, and Plaintiff fails to allege, any specific
deficiencies in the training completed by the Defendant Officers.

The issue of municipal liability in the instant case is further complicated by Plaintiff's
assertion that the policy allegedly in effect by the Defendant City of Plattsburgh implicated
Plaintiff's mental health. (R-48 ¶ 139). A similar issue was raised by the plaintiff in <u>Estate of</u>

6

Jaquez v. City of New York, No. 10-Civ-2881 (KBF), 2014 WL 2696567 (SDNY Jun. 9, 2014),

aff'd, 706 Fed. Appx. 709 (2d Cir. 2017).

In Estate of Jaquez, plaintiffs argued that the City was deliberately indifferent to the

plaintiffs' decedent's constitutional rights "…insofar as it provided inadequate training to police

officers regarding the "appropriate use of deadly force" and "techniques to de-escalate

confrontations with emotionally disturbed persons." Estate of Jaquez at *5. Plaintiffs in that case

cited to five (5) other incidents of NYPD officers using deadly force against alleged emotionally

disturbed persons ("EDPs"). The court ultimately granted defendants' motion for summary

judgment on plaintiffs' municipal liability claim. In so holding, the Court reasoned

> "…there is no allegation in the Complaint that Mr. Jaquez was identified as an
> EDP when the call was placed, nor that the defendant officers believed him to be
> or identified him as an EDP upon their arrival. In the absence of any such
> allegation, even were the Court to accept that the incidents cited in the Complaint
> show a pattern or practice, there is nothing to suggest that this case fits into that
> pattern." Id.

Additionally, the Court stated "…based on the allegations, there is no plausible inference that

even if the City had specially-trained officers to handle EDPs, they would have been deployed in

this case. There similarly is nothing to suggest that [with] better-training NYPD officers would

have handled Mr. Jaquez any differently." Id. at *6. As in Estate of Jaquez, here there is no

indication that the Defendant Officers believed Mr. Butchino to be experiencing mental health

issues. Even if the Defendant Officers were aware, there is nothing to suggest that with better-

training Officers would have handled Mr. Butchino any differently.

Plaintiff has alleged numerous times that the Defendant Officers knew he was

experiencing mental health issues prior to the altercation. "He begged for his anti-anxiety

medication." (R-34 ¶ 3). "Mr. Butchino informed the police that he had anxiety and PTSD." (R-

38 ¶ 48). "Mr. Butchino repeatedly requested access to his prescription anti-anxiety medication, which was denied." (R-38 ¶ 52). Plaintiff's Counsel even asserted at the pre-motion conference with the Court that Mr. Butchino notified Officer Welch that he had PTSD during the booking process. These assertions are completely unsupported by the video and audio evidence in this case.[1]

"[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." Hicks, at *3 (quoting, Tieman v. City of Newburgh, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *13 (SDNY 2015)). There is no evidence in this case that the City of Plattsburgh has a municipal policy, custom, or usage of not requiring its police officers to attempt de-escalation before using force against detainees or arrestees, including with respect to persons experiencing mental health issues. Additionally, the video and audio evidence in this case conclusively establishes that Mr. Butchino did not tell the Defendant Officers that he had PTSD until several hours after the incident occurred and therefore even if Plaintiff had more than mere allegations of a municipal custom, practice, or policy, this case would not fit into that pattern, and must fail.

**B.    Plaintiff will be unable to prove that the Defendant City of Plattsburgh had a policy, custom or usage of using excessive force against arrestees and/or detainees.**

Plaintiff may point to the existence of the revised Use of Force policy of 2020 as evidence of a failure to train or supervise, which amounts to deliberate indifference to his constitutional rights. Such was the case in Felix v. City of New York, 344 F.Supp.3d 644 (SDNY

---

[1] The Defendant Officers' knowledge, or lack thereof, of Plaintiff's alleged disability is described more fully in the section below relating to his claims pursuant to the Americans with Disabilities Act and Rehabilitation Act.

2018). However, <u>Felix</u> is distinguishable from the instant case as the Use of Force policy there was changed in a direct response to the incident underlying that case. Here, the policy was changed due to the national outcry following the deaths of George Floyd and Breonna Taylor, at the direction of then-Mayor Reed (R-438, lines 7-8). Even if the policy was changed in response to Mr. Butchino's claim, Plaintiff's <u>Monell</u> claim based on this premise still fails. Although a <u>Monell</u> claim can be premised upon deficient training, or the failure to train, a plaintiff must identify a specific deficiency in that training which is so closely related to his injury such that it "actually caused the constitutional deprivation." <u>Amnesty Am.</u>, 361 F.3d 119. The record does not reflect, and Plaintiff fails to allege, any specific deficiencies in the training completed by the Defendant Officers in relation to the Use of Force policy in effect at the time the incident occurred. As established above, mere allegations are insufficient to demonstrate the existence of a municipal custom. <u>See, Hicks</u>, at *3. Therefore, Plaintiff's <u>Monell</u> claim, as it relates to excessive force, cannot be maintained and Defendants are entitled to summary judgment.

    **C.**    **Plaintiff will be unable to prove that the Defendant City of Plattsburgh had a policy, custom or usage of allowing its police officers not to intervene to prevent violations of an arrestee or detainee's rights.**

Plaintiff may argue that there is a failure to train or supervise regarding the requirement to intervene to prevent violations of a detainee's rights, Plaintiff's <u>Monell</u> claim on this count still fails. Like the claims above, Plaintiff is required, but remains unable, to identify a specific deficiency in the training that the Defendant Officers received which is so closely related to his alleged injury such that it "actually caused the constitutional deprivation" <u>Amnesty Am.</u> 361 F.3d 119.

There is no support for Plaintiff's <u>Monell</u> claim based on the failure to intervene. As with the claims above, Plaintiff has only provided allegations of a municipal custom, a practice of

9

tolerating official misconduct, or inadequate training; these allegations are insufficient to demonstrate the existence of such a custom. See, Hicks, at *3. Therefore, Plaintiff cannot succeed on this claim and the Defendants are entitled to summary judgment.

### III.   PLAINTIFF'S CLAIMS PURSUANT TO THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT MUST FAIL BECAUSE THE DEFENDANTS WERE NOT AWARE THAT MR. BUTCHINO WAS A QUALIFIED INDIVIDUAL WITH A DISABILITY

To establish liability under the Americans with Disabilities Act (hereinafter "ADA"), a plaintiff must demonstrate that:

> (1) he or she is a "qualified individual" with a disability; (2) the defendant is subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant by reason of the plaintiff's disabilities. Henrietta v. Bloomberg, 331 F3d 261, 272 (2d Cir. 2003).

In the Second Circuit, analysis for claims under the Rehabilitation Act is largely the same as the analysis for claims under the ADA. "[A]lthough there are subtle differences between these disability acts, the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities." Henrietta v. Bloomberg at 272, citing, Henrietta D., 119 F.Supp.2d at 206.

Addressing the second factor first, the ADA applies to "...all services, programs, and activities provided or made available by public entities." 28 C.F.R. §35.102(a). A public entity means "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 28 C.F.R. §35.104. Furthermore, the Northern District of New York has established "[a]n arrest or seizure of an individual, including post arrest transportation and investigation, is a "service, activity, or benefit" of a police department and is thus covered under

10

the ADA". <u>Nicholas v. City of Binghamton</u>, No. 10-CV-1565 (TJM), 2012 WL 3261409 at *13 (NDNY Aug. 8, 2012), <u>citing</u>, <u>Anthony v. City of New York</u>, 2001 WL 741743 (SDNY Jul. 2, 2001). The City of Plattsburgh and the Plattsburgh Police Department are public entities under the ADA. Additionally, Mr. Butchino's arrest and post-arrest detainment qualify as a service, activity, or benefit of a police department.

Returning to the first <u>Henrietta</u> factor, the ADA includes a list of conditions that substantially limit major life activities. <u>See</u>, 28 CFR §35.108(d)(2)(iii). This subsection provides that PTSD is a disability that substantially limits major life activities. <u>See</u>, 28 CFR §35.108(d)(2)(iii). Therefore, Mr. Butchino is a "qualified individual" under the ADA. It remains the case that Plaintiff must be able to prove that he has a diagnosis of PTSD through the use of admissible evidence.

Assuming, *arguendo*, that Mr. Butchino can in fact prove his PTSD diagnosis, his claim still fails as he will not be able to prove that he was discriminated against at all, much less on the basis of his disability. There exists a duty to provide accommodations when the defendant knew or reasonably should have known that the plaintiff was a qualified individual with a disability. <u>Brady v. Wal-Mart Stores, Inc.</u>, 531 F3d 127, 135 (2d Cir. 2008). In <u>Felix v. City of New York</u>, 344 F.Supp.3d 644 (SDNY 2018), the Court held that the defendant had sufficient notice where an employee of the facility where plaintiff lived informed the defendant detectives that the facility housed individuals with mental illnesses and that plaintiff was diagnosed with paranoid schizophrenia. Even with this broad construction, Plaintiff will still be unable to prove that the Defendant Officers had notice of his diagnosis of PTSD.

Plaintiff may argue that, given that notice is broadly construed, his telling Officer Welch that he went to Afghanistan during the Suicide Prevention Screening questionnaire was sufficient

11

to constitute notice. (R-1380, Booking, 3:21:12 A.M.). For this to be the case, Officer Welch must have understood that Mr. Butchino meant he was deployed to Afghanistan as a member of the United States Military, and have assumed that every individual who had been deployed to Afghanistan has PTSD. The United States Department of Veterans Affairs estimates that PTSD afflicts eleven (11) percent of Veterans of the war in Afghanistan. "PTSD a Growing Epidemic", NIH         Medline        Plus,        Winter        2009,        at        14, https://magazine.medlineplus.gov/pdf/MLP_Winter_09.pdf. Therefore, Mr. Butchino is in the minority and it would be unreasonable to expect Officer Welch to assume that just because Mr. Butchino was deployed to Afghanistan, he was one of the 11% of Veterans with PTSD.

The uncontroverted video and audio evidence establishes that Mr. Butchino did not tell any of the Defendant Officers that he had PTSD until several hours after the incident occurred. Mr. Butchino did not tell Officer Welch that he had PTSD at any point during the booking process. (R-1380, Booking 1, 3:19:58 A.M. – 3:25:46 A.M.). He did not tell the Defendant Officer who came in to ask if he was ok. (R-1380, Booking 1, 4:21:09 A.M. – 4:21:20 A.M.). He did not tell any of the Defendant Officers who came in to the cell block to obtain his shorts. At 4:53 A.M., Mr. Butchino told Cpl. Pond that he had PTSD. (R-1380, Booking, 4:53:00 A.M.) Therefore, the Defendant Officers neither knew, nor reasonably should have known, that Mr. Butchino was a qualified individual with a disability to whom they owed a duty to provide reasonable accommodations, whatever those may be under these circumstances.

If the Court determines, despite the audio and video evidence, that the Defendant Officers knew or should have known about his PTSD diagnosis and their corresponding duty, Plaintiff will still be unable to prove his claim as exigent circumstances existed which precluded the administration of a reasonable accommodation, if in fact one actually existed.

12

In <u>Sage v. Winooski</u>, the United States Attorney General filed a Statement of Interest, the purpose of which was to "clarif[y] that Title II of the ADA applies to stops and arrests of people with disabilities and explains the application of Title II's reasonable modification requirement in this context, where the officers may have faced exigent circumstances at some points during the interaction."  <u>Statement of Interest of the United States of America</u>, no. 2:16-cv-00116 (WKS) (D. Vt. Mar. 22, 2017). As established <u>in Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 844 (1984), the Department's interpretation of its regulations is entitled to substantial deference.

It is the position of the United States that "...the law does not create a categorical exception for law enforcement personnel during exigent circumstances." <u>See</u>, <u>Statement of Interest of the United States of America</u>. Rather, "...whether there is an exigency is part of the general fact-based determination as to whether a reasonable modification was available under the circumstances."

In <u>Sage v. Winooski</u>, part of the fact-based determination was whether the plaintiff posed a direct threat. <u>Sage</u> at *4. Pursuant to ADA §35.139, a public entity is not required to provide reasonable accommodations when an individual poses a direct threat to the health or safety of others. When determining that the plaintiff was not a direct threat, the Court looked at the fact that the plaintiff "was a mentally-ill individual accused of trespassing who became violent only after being threatened with arrest and shown a handcuff case." <u>Sage</u> at *4. What's more is that "...the violent behavior could arguably have been avoided if the officers had acknowledged and accommodated Mr. Sage's mental illness." <u>Id.</u> Unlike the Defendant Officers in the instant case, the officers in <u>Sage</u> knew or reasonably should have known about his mental illness prior to their interaction.

13

A similar factual analysis was performed in <u>Sheehan v. City and County of San Francisco</u>, 743 F.3d 1211 (9th Cir. 2014)[2], *reversed in part, certiorari dismissed in part*, 135 S.Ct. 1765 (2015). Prior to entering plaintiff's home, the defendant officers were made aware that she was suffering from paranoid schizophrenia. In making the determination that a jury could find that the actions of the defendant officers were unreasonable, the court highlighted:

> "...all of the information known to the officers suggested that Sheehan wanted only to be left alone in her home. She had shown no desire to leave the room. Although she acted in a threatening manner, she had done so only to those who had entered her home without her permission. The officers were also aware that Sheehan, who they knew was both mentally ill and emotionally disturbed, was not likely to respond rationally to police officers breaking down her door." <u>Sheehan</u> at 1227.

As recognized in the Statement of Interest, the <u>Sheehan</u> Court determined that "a jury could find that officers failed to reasonably accommodate plaintiff's disability by employing "confrontational tactics" during the encounter instead of "engaging in non-threatening communications" or "using the passage of time to defuse the situation." <u>Statement of Interest</u> at 14, citing, <u>Sheehan</u> at 1233. The same cannot be said for the instant case for reasons discussed further below.

It was the policy of the Plattsburgh Police Department to either transport pre-arraignment detainees to the UVM-CVPH Emergency Department or place them on constant watch if they show signs of suicidality. (R-1157, lines 9-13). The criteria for the choice of the above two options was the probability that the subject would harm himself or someone else [at the Plattsburgh Police Department] versus the safety of the individuals at the hospital. (R-1157, lines

---

[2] Although this is a Ninth Circuit case, <u>Sheehan</u> has previously been cited to by New York District Courts. In <u>Pennington v. City of Rochester</u>, No. 13-CV-6304 (FPG), 2018 WL 3023383 (WDNY Jun. 18, 2018), the Western District applied the reasoning in <u>Sheehan</u> to a case involving warrantless entry based on the defendant officer's erroneous belief that plaintiff was in distress and needed emergency assistance. The Southern District cited to <u>Sheehan</u> to support its decision that an arrest constitutes a "service, program, or activity" of the NYPD within the scope of Title II of the ADA in <u>Williams v. City of New York</u>, 121 F.Supp.3d 354, 366 (WDNY 2015).

23-25; R-1158, line 2). Transporting Mr. Butchino to UVM-CVPH was not an option in this case. The reason that Mr. Butchino was being detained was for assaulting Christopher Dumont earlier in the night. While Mr. Butchino was transported to the Plattsburgh Police Department, Mr. Dumont was transported to the UVM-CVPH Emergency Department where he received medical attention for the injuries he sustained at the hands of Mr. Butchino. UVM-CVPH is the only hospital in the Plattsburgh area. Transporting Mr. Butchino to UVM-CVPH, where the victim of his attack was receiving medical attention was determined to be a security risk. Further, given the unprovoked nature of Mr. Butchino's attack of Mr. Dumont, the concern included that transporting Mr. Butchino to UVM-CVPH would risk the safety of the other patients, employees of the hospital, and possibly officers. As Plaintiff would pose a direct threat to the employees, patients, and officers in the hospital, Plaintiff's transport and his argument based thereon argument was not a reasonable accommodation

Vested with the 20/20 vision of hindsight one may say now that the Defendant Officers' fear of Mr. Butchino was unreasonable, but during the moments of the encounter, which were fluid and changing, it was objectively reasonable for them to be concerned about their own safety. During his time in the cells, Plaintiff sang a song with lyrics like "I killed a lot of people" and "I shot them in the chest and then in the head." (R-1380, Cell 1, 4:06:57 A.M.). Therefore, even if Mr. Butchino could prove that the Defendant Officers knew or reasonably should have known that he had a qualifying disability, which he cannot, exigent circumstances existed which prevented the Defendant Officers from providing what Mr. Butchino considered a reasonable accommodation for his disability.

Plaintiff also asserts a claim that "the City of Plattsburgh was aware that its existing policies and practices made it substantially likely that disabled individuals would be denied their

15

federally protected rights, and acted with deliberate indifference in failing to act to prevent or mitigate the denial of those rights." (R-49 ¶ 147). On its face, this claim is very similar to the claim raised by Mr. Butchino under the theory of municipal liability.

The Second Circuit has held that the requirement of deliberate indifference under the ADA and Rehabilitation Act, which was not specifically defined therein, was similar to deliberate indifference under Title IX, which defined deliberate indifference as "[a]n official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of the discrimination in the programs and fails to adequately respond." Loeffler v. Staten Island University Hospital, 582 F3d 268 (2d Cir. 2009), citing, Gebser v. Lago Vista Indep. School Dist., 524 US 274 (1998). In a more recent decision, the Southern District Court held that deliberate indifference is a deliberate choice, rather than negligence or bureaucratic inaction. Viera v. City of New York, 15 Civ. 5430 (PGG), 2018 WL 4762257 (SDNY Sept. 30, 2018). There was no testimony elicited of any of the Defendant Officers that they had actual knowledge of any discrimination in the policies of the Plattsburgh Police Department.

Application of these definitions to the facts of the instant case results in the conclusion that the Defendant City of Plattsburgh did not act with deliberate indifference. Plaintiff cannot prove that Defendant had actual knowledge of his disability, much less knowledge of ongoing discrimination by the Officers of the Plattsburgh Police Department. The deposition testimony of Captain Kiroy establishes that there is a practice of modifying existing policies when the Police know that an arrestee has a disability. (R-1182, lines 4-6). This testimony establishes and underscores that the City was not acting with deliberate indifference.

16

It is likely that Plaintiff will point to the fact that the Plattsburgh Police Department enacted a revised Use of Force policy in 2020 in an attempt to establish that there was deliberate indifference prior to the revision, as was the case in <u>Felix v. City of New York</u>[3]. Although Mr. Butchino used the public outcry in response to the deaths of George Floyd and Breonna Taylor to gain sympathy and publicity for his own case, the modification of the Plattsburgh Police Department's Use of Force policy had nothing to do with Mr. Butchino or his allegations. (R-438, lines 7-8).

Finally, Mr. Butchino asserts that he was discriminated against on the basis of his disability. Even when viewed in the light most favorable to the Plaintiff, this claim fails. A similar claim was asserted by the plaintiff in the recently decided <u>Tardif v. City of New York</u>, No. 19-1360, 2021 WL 1030973 (2d Cir. Mar. 18, 2021). In <u>Tardif</u>, the plaintiff had epilepsy and was on a strict medication schedule. After being arrested, she told the officer processing her that she had epilepsy and that her medication was in her backpack. <u>Tardif</u> at *2. After she was transferred to a special medical precinct, she repeatedly informed officers that she needed to take her medication twice a day; they did not respond to her requests. <u>Id.</u> Although the plaintiff received the first dose of her medication, the plaintiff did not receive the second dose of her medication and had a seizure for which she was transported to Bellevue Hospital. <u>Id.</u> at *3.

In granting the defendant officer's motion for summary judgment on plaintiff's ADA discrimination claim the District Court held "…mere failure to attend to the medical needs of a person in custody does not in itself violate the ADA." <u>Id.</u> at *5. On appeal, the question presented to the Second Circuit was "…whether the alleged failure by the police to provide

---

[3] The specific details of <u>Felix v. City of New York</u>, 344 F.Supp.3d 644 (SDNY 2018), are discussed more fully in the sections above.

17

custodial medical services to Tardif in a timely and adequate manner prior to her arraignment, by itself, constitutes a failure to make a reasonable accommodation "by reason of" an individual's disability under the ADA." Tardif at *7. The Circuit's simple and salient answer is "it does not." Id. In so holding, the Court reasoned that plaintiff's claim was not truly whether she was denied medical services because she has a disability, "[i]nstead, her claim relates solely to whether she received adequate medical treatment in police custody for her disability, and such a claim is not cognizable under the ADA." Id. at *8. Responding to plaintiff's arguments, the Court stated "...there is no evidence that the delay in providing Tardif's medication was more than an isolated and temporary incident; nor is there any indication that the City systematically delays or denies pre-arraignment detainees reasonable medical services for their disabilities." Id. at *10. In looking to the factual record, the court concluded,

> "[i]n sum, the record presents no facts from which a reasonable jury could infer that there was a disability-based reason for the delay in Tardif's medical services. Any shortcomings that existed in the provision of medical service *for* Tardif's epilepsy provide no basis to conclude that she was denied meaningful access to such services *because of* her disability, and thus the ADA claim fails as a matter of law." Id. at *10.

In the instant case, unlike Tardif, at no point in time prior to the incident did Mr. Butchino tell any of the Defendant Officers that he had PTSD or any other mental health issues. Additionally, exigent circumstances existed that prevented the transport of Mr. Butchino to the only hospital in Plattsburgh; this was an isolated incident and not indicative of a policy that the Plattsburgh Police Department systematically delays or denies pre-arraignment detainees reasonable medical services for their disabilities. Even if the City of Plattsburgh should have provided Mr. Butchino medication or transported him to receive psychiatric treatment, this alone does not constitute a violation under the ADA. Applying the reasoning in Tardif, the alleged

18

failure by the Plattsburgh Police Department to provide custodial medical services to Mr. Butchino in a timely and adequate manner prior to his arraignment, by itself, does not constitute a failure to make a reasonable accommodation "by reason of" his disability under the ADA. Moreover, there is no credible evidence to support Plaintiff's assertion that he was denied meaningful access to medical services *because of* his disability, and thus his claims pursuant to the ADA and Rehabilitation Act fail as a matter of law.

As Plaintiff will be unable to produce any credible evidence that the Defendants actually knew he had PTSD or any other mental health issues, or that they discriminated against him because of his disability, the Defendants respectfully request that the Court dismiss with prejudice Plaintiff's claims against Defendants pursuant to the Americans with Disabilities and Rehabilitation Acts.

### IV. PLAINTIFF'S EXCESSIVE FORCE CLAIM PURSUANT TO 42 USC §1983 MUST FAIL AS A MATTER OF LAW BECAUSE THE FORCE USED WAS OBJECTIVELY REASONABLE, PROPORTIONAL AND NECESSARY

Civil liability is imposed under 42 U.S.C. §1983 only upon those persons whose conduct, while acting under the color of state law, deprives an individual of rights, privileges, or immunities secured by the Constitution or other laws. §1983 does not itself create or establish any federally protected rights. See, Gonzaga University v. Doe, 536 U.S. 273, 285 (2002).

A Plaintiff pursuing a claim pursuant to §1983 for excessive force bears the burden of proving that the force used was objectively unreasonable in light of the facts and circumstances confronting the defendant officers. In Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015), the Supreme Court established that a pre-trial detainee who brings a claim of excessive force pursuant to the Fourteenth Amendment must show, "the force purposely or knowingly used

against him was objectively unreasonable." The standard of objective reasonableness "turns on the facts and circumstances of each particular case." Kingsley at 2473, citing, Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L. Ed. 3d 443 (1989). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Kingsley at 2473, citing, Graham, 490 U.S. 396.

The Supreme Court established a non-exclusive list of factors that bear on the reasonableness or unreasonableness of the force used:

> "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Kingsley at 2473; see also, Graham at 396, 109 S. Ct. 1865.

As will be described in more detail below, when the Officers' responses are viewed from the perspective of the Defendant Officers, it is clear that their response and use of measured physical force was objectively reasonable as a matter of law and thus, Plaintiff's excessive force claim must be dismissed.

### A.   The force used by Defendant Officer Welch was objectively reasonable in light of the circumstances encountered by Officer Welch at the scene.

> "I swear to god I'm gonna fucking hurt…I hurt more people than you think…I've hurt a lot of fucking people…I've killed a lot of hajis…shot 'em in the chest and then the face…you should give me my medication…to prevent me from killing more people…and Plattsburgh don't think I'll shoot them in the face…and the Plattsburgh Police don't think I give a fuck." (R-1380, Cell 1, 4:06:57 A.M.)

As Mr. Butchino sat in Cell 1 in the Plattsburgh Police Department, he sang the above song to an audience of whomever could hear him. For the most part, his audience consisted solely of Officer Welch. Officer Welch could not be sure if Mr. Butchino was exaggerating, he

20

did tell Officer Welch that he had been to Afghanistan. (R-1380, Booking, 3:21:12 A.M.). Officer Welch was also aware that only a few hours before Mr. Butchino had assaulted Christopher Dumont, without provocation (Plaintiff was arrested and charged with assault).

Following his suicide attempt, the determination was made that Mr. Butchino needed to be transferred from Cell 1 to Cell 4, so that he could be constantly monitored. (R-1380, Booking, 4:44:35 A.M.). Officer Welch knew that Mr. Butchino had not been combative with him up until that point; although he needed to be sat down and handcuffed to the bench during the booking process. (R-1380, Booking, 4:45:25 A.M.). The transfer started easily enough, but then Mr. Butchino began ignoring their instructions. (R-1380, Cell 4 – Video 1, 4:46:02 A.M.) Officer Welch unholstered his Taser and advised Mr. Butchino that he needed to comply, or he would be tased. (R-761, lines 15-18). Officer Welch had hoped that the threat of the Taser would be enough to get Mr. Butchino to cooperate; most people do not like being tasered. (R-838, lines 16-19).

Within minutes, Mr. Butchino and four (4) officers were in the cell. (R-1380, Cell 4-Video 1, 4:47:29 A.M.). Mr. Butchino was still struggling with the Officers. Officer Welch could not deploy his taser, there were too many people, so he passed it out of the cell to another Officer. (R-1380, Cell 4-Video 1, 4:47:54 A.M.). The Officers continued to try to get Mr. Butchino's shorts off of him, but he was still not complying. (R-1379). Trying to stun Mr. Butchino, Officer Welch punched Mr. Butchino. (R-1379). Plaintiff's testimony on the number of times he was punched has varied, at one point he testified that he was punched "at least ten (10) times." (R-4; R-271, lines 7-18; R-241, lines 15-23). He also testified that he could not give an exact number of times he was punched. (R-238, line 16). However, Officer Welch's testimony was that he threw two (2) punches, from the hip. The first punch grazed the side of Mr.

21

Butchino's cheek. The second punch connected with Mr. Butchino's nose. (R-1379). Briefly stunned, the Officers were able to remove Mr. Butchino's shorts and retreat from the cell. (R-1380, Cell 4-Video 1, 4:48:18 A.M.). As a result of being punched in the face, Mr. Butchino sustained a mild septal deviation for which he has not received any surgical intervention to date.

The allegations of excessive force against Officer Welch center around the fact that Officer Welch struck Plaintiff in the face. Addressing a case of an Officer using punches to subdue a detainee who was resisting officers, the Northern District in Hilson v. M. Maltese, No. 9:09-CV-1373 (NAM/ATB), 2012 WL 6965105 (NDNY Dec. 14, 2012), determined that such a use of force was *de minimis*. To support this conclusion, the Court cited to Allaway v. McGinnis, 473 F.Supp.2d 378, 382-83 (WDNY 2007), in which the defendant officer punched the plaintiff four (4) times, for the sole purpose of getting plaintiff to comply with the officers, and the punches "…were delivered in a deliberate, methodical manner from a relatively short distance, while plaintiff was still struggling and resisting the officers' attempts to place mechanical restraints on him." As in the instant case, the plaintiff in Hilson argued that because the punches were applied to his face, the force was excessive. However, the Court rejected this argument, citing to Espinal v. Goord, 00 Civ. 2242, 2001 WL 476070 (JP), at *13 (SDNY May 7, 2001), "plaintiffs' allegation that officer hit him two or three times in the face, causing his face to turn red, but resulting in no other injuries are insufficient to state an Eight Amendment [excessive force] claim." In Espinal, the punches were applied to calm the plaintiff down. Espinal at *4. Although the plaintiffs in these cases are detainees in a prison, the plaintiff must still establish the use of excessive force using the objective reasonableness standard and therefore these holdings are persuasive.

22

Accordingly, the use of punches or strikes have been held to be reasonable uses of force where an arrestee is physically resisting and as a means of getting plaintiff to comply with the Defendant Officers. As can be clearly observed by the video evidence in this case, Plaintiff was non-compliant with the Defendant Officers' commands, he left the cell to confront the Defendant Officers, and resisted them when they attempted to get him back into the cell and remove his shorts.

The conclusion that Defendant Welch's actions in punching Mr. Butchino does not constitute excessive force is supported by the application of the factors established in Kingsley. Due to Plaintiff's actions in resisting, and the threat to Defendant Welch's safety and the safety of other Officers, there existed a relationship between the need for the use of force and the amount of force used. As a result of the use of force, Mr. Butchino sustained a mild deviated septum, for which he has not had any surgical intervention. (R-42; R-361). Defendant Welch attempted to de-escalate the situation by advising Mr. Butchino if he did not comply, he would be tased. (R-1379). The security problem at issue was severe as Mr. Butchino was a threat to himself and those around him. As discussed above, Defendant Welch reasonably perceived Mr. Butchino to be a threat. As can clearly be seen in the video, Mr. Butchino was actively resisting. (R-1380, Cell 4 – Video 1, 4:47:10). Consideration of these facts support the conclusion that the force used by Defendant Welch against Mr. Butchino was not excessive.

In the analysis of the reasonableness Officer Welch's fears and concerns, one is guided by the law and that it has been held that a suspect's attempt to flee or fight back in such a case poses a potentially serious and imminent risk to an officer's safety. See, Tracy, 623 F.3d 97. It has been further held that failure to comply with a direct order and actively resisting arrest necessitates a forceful response. See, Tracy, 623 F.3d 97. Viewing the situation from the

23

perspective of Officer Welch, his use of force in administering two (2) punches to Plaintiff was measured, necessary, and appropriate, and thus objectively reasonable.

**B.    The force used by Defendant Officer Wood was objectively reasonable in light of the circumstances encountered by Officer Wood at the scene.**

Like Officer Welch, Officer Wood had previous interactions with Mr. Butchino, being one of the Officers who arrested him for assaulting Christopher Dumont in the City of Plattsburgh earlier that night. Knowing of Mr. Butchino's earlier behavior, Officer Wood was wary as he was moving Mr. Butchino from Cell 1 to Cell 4. He observed that Mr. Butchino's posture was defensive with his fists clenched, as if in a boxer stance. (R-912, lines 11-18). As a precautionary measure, Officer Wood grabbed Mr. Butchino's arm. (R-913, lines 14-20). Unexpectedly, Mr. Butchino began fighting with the Officers.

Officer Wood entered the cell with Mr. Butchino and the other Officers. (R-1380, Cell 4 – Disc 1, 4:47:29 A.M.). Mr. Butchino continued to be combative. Plaintiff turned his attention to Officer Wood and grabbed his shirt with one hand and underneath his right arm with the other. (R-920, lines 8-13). Mr. Butchino's grasp on Officer Wood was so tight that he caused damage to Officer Wood's uniform in two places; Mr. Butchino ripped the badge off and tore the shirt under the right arm. (R-927, lines 7-13).

Concerned for his own safety, the safety of the other Officers, and Mr. Butchino, Officer Wood grabbed Mr. Butchino by the genitals. (R-925, lines 9-11). Officer Wood's objective was to have Mr. Butchino redirect his behavior to allow officers to retreat out of the cell block safely. (R-932, lines 8-10). Officer Wood's conduct may have been unorthodox but does not constitute excessive force.

In <u>Jackson v. Mastrangelo</u>, No. 6:17-CV-06448 (EAW), 405 F.Supp.3d 488 (WDNY 2019), the plaintiff brought an action against the defendant officers alleging excessive force arising from one officer's actions in "yanking" on his genitals during a pat frisk. In denying the defendants' motion to dismiss, the court acknowledged "[i]t is more than speculative that the conduct alleged, i.e., an officer grabbing and pulling Plaintiff's genitals for no apparent purpose other than taunting Plaintiff, was unreasonable." <u>Jackson</u> at 492. The court further reasoned "...the facts as Plaintiff alleged them indicate no justifiable reason for Mastrangelo to have yanked Plaintiff's genitals. Therefore, Plaintiff has properly alleged that unreasonable force was used against him." <u>Id.</u> To support this conclusion, the Court cited to <u>Pulliam v. Lilly</u>, No. 07-CV-1243 (SJF/AKT), 2010 WL 935383 (EDNY 2010), in which the Eastern District reasoned "...the record is devoid of any evidence reflecting a reason for the use of any force during the interrogation, i.e., that plaintiff was acting aggressively or otherwise posed a threat to the officers during the interrogation. Accordingly, the use of more than de minimis force, if even that, under the circumstances presented here, would not be objectively reasonable." <u>Jackson</u> at 492, <u>citing</u>, <u>Pulliam</u> at *5. Therefore, grabbing an individual's genitals when there is a justifiable reason to do so, as Officer Wood did here, does not constitute excessive force.

Applying the <u>Kingsley</u> factors to the actions of Officer Wood reveals that the force employed was objectively reasonable. Officer Wood was presented with a rapidly evolving situation, with an individual who was acting aggressive. Wood feared for his own safety, the safety of the other Officers, and the safety of Mr. Butchino, who minutes before had tried to kill himself and continued to refuse to turn over the shorts which were the means of his suicide attempt. (R-925, lines 9-11). Officer Wood did not grab Mr. Butchino's genitals for no apparent purpose, but rather he was justified in doing so based on how the situation appeared to him at the

25

time the incident occurred. Additionally, Mr. Butchino did not sustain any injuries as a result of Officer Wood grabbing his genitals. Consequently, the force employed by Officer Wood was objectively reasonable and will not substantiate a claim for excessive force.

**C.    Plaintiff did not sufficiently plead, and cannot prove that Defendant Officers Pond, Minogue, and Vassar used objectively unreasonable force against Plaintiff.**

Unlike Plaintiff's claims against Defendants Welch and Wood, Plaintiff has not alleged any specific use of force by Defendants Pond, Minogue, and Vassar. Pursuant to Federal Rule of Civil Procedure 8 (a)(2), a Complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. This rule has been thoroughly analyzed in two United States Supreme Court decisions, Bell Atlantic v. Twombly, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). These cases establish that this pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft at 678, citing, Twombly at 555. "Nor does a complaint suffice if it tenders "naked assumptions" devoid of "further factual enhancement."" Ashcroft at 678, citing, Twombly at 557.

Plaintiff has named Defendants Pond, Minogue, and Vassar in his claim of excessive force. These Officers were involved in the altercation that occurred with Mr. Butchino on the night of August 19, 2017, this much is true. However, a thorough reading of Plaintiff's Complaint does not reveal what force was allegedly used by Officers Pond, Minogue, and Vassar. Rather, we are left with the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation" that was specifically outlawed in Ashcroft and Twombly. Plaintiff has the burden to establish that the force used by Officers Pond, Minogue, and Vassar was objectively unreasonable. During their depositions, Officers Pond, Minogue, and Vassar testified to their

involvement in the altercation. Even viewing this testimony in the light most favorable to Mr. Butchino, the allegations of excessive force against these Defendant Officers still fail.

It was Officer Minogue's testimony that he and Officer Wood "placed Butchino against the wall and struggled with him to get him into the cell." (R-630, lines 16-18; R-1380, Cell 4-Disc 1, 4:46:15 A.M.). Officer Minogue did not recall using any force against Mr. Butchino at the time during the altercation when Mr. Butchino and the Defendant Officers were in the cell. (R-649, lines 20-23; R-1380, Cell 4 – Disc 1, 4:47:29 A.M.).

Corporal Pond testified that he did not recall using any force in the hallway. (R-1222, lines 3-4). While Mr. Butchino and the Defendant Officers were in the cell, Corporal Pond testified "I think I was trying to hold his torso at one point, then his legs, and at one point I held his legs down." (R-1226, lines 11-13; R-1380, Cell 4 – Disc 1, 4:47:29 A.M.).

The force used by Defendant Officers Minogue and Pond is akin to the force used by the Defendant Officer in Jenkins v. Medert, No. 9:16-CV-1491 (MAD/DJS), 2018 WL 5728050. Of note, in Jenkins the altercation occurred at the Albany County Correctional Facility ("ACCF"), but the Court determined him to be a pretrial detainee because he was detained as a parole violator; therefore, the plaintiff had to establish only that the force purposely or knowingly used against him was objectively unreasonable. In Jenkins, the plaintiff was walking towards the visitation room at the ACCF, believing plaintiff to be walking too fast, the defendant ordered him to slow down and then another to stop. Jenkins at *1. After being ignored, the defendant grabbed either plaintiff's collar or his religious head covering; plaintiff described the force used as "a grab and yank." Jenkins at *4. The Court noted that defendant did not punch, kick, or otherwise strike plaintiff. Jenkins at *1. After applying the Kingsley factors, the Court held:

27

"[t]he event underlying this litigation involved a single use of force, grabbing Plaintiff for, at most, a few seconds and it was done in the context of an inmate's failure to fully comply with staff directions, did not require any immediate medical attention, and does not appear to have resulted in any significant injury to plaintiff. This conclusion is consistent with a long line of cases finding no constitutional violation in the face of a *de minimis* use of force." Jenkins at *4.

Ultimately, the Court granted the defendant's motion for summary judgment. An outcome that should be repeated in the instant case.

Both Officers Minogue and Pond grabbed Plaintiff for, at most, seconds following Mr. Butchino's failure to comply with directions, the use of force did not require any immediate medical attention, and has not resulted in any significant injury. Therefore, in line with Jenkins, the force used by Officers Minogue, and Pond should be determined to be *de minimis* and the claims against them dismissed.

As established above, Sergeant Vassar was not present in the cell while the altercation happened. (R-991, lines 23-25; R-1380, Cell 4 – Video 1, 4:47:31 A.M.). In fact, the only action Sergeant Vassar took to help the Defendant Officers with Mr. Butchino was "pushing on the back of one of the officers, I don't know who it was." (R-1000, lines 10-11). As Sergeant Vassar did not use any force against Mr. Butchino, the excessive force claim against him should be dismissed.

## V.    PLAINTIFF'S CLAIM PURSUANT TO §1983 FOR FAILURE TO INTERVENE AGAINST ALL INDIVIDUAL DEFENDANTS MUST FAIL AS A MATTER OF LAW

In order to establish a claim for failure to intervene, a plaintiff must prove the use of excessive force by someone other than the defendant under consideration

"1) possessed actual knowledge of the use by another [police] officer of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregard that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." Cicio v.

28

<u>Lamora</u>, 2010 WL 1063875 (NDNY Feb. 24, 2010), <u>citing</u>, <u>Curley v. Village of</u> <u>Suffern</u>, 268 F3d 65, 72 (2d Cir. 2001).

"Whether an officer had sufficient time to intercede or was capable of preventing the harm caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." <u>Sanders v. Torres</u> at 13, <u>citing</u>, <u>Anderson v. Branen</u>, 17 F3d 552, 557 (2d Cir. 1994). Between the video evidence and the deposition testimony of the Defendant Officers, a jury could not possibly conclude that Plaintiff could prove his claim of failure to intervene against any of the Defendant Officers.

In <u>Sanders v. Torres</u>, the Court held that where Defendant Sadowski's alleged act of striking plaintiff occurred spontaneously, was unexpected and the act was of such a brief and unexpected nature that Defendants Grzeskowiak and Skelly did not have an opportunity to intervene. <u>Sanders</u> at 13. In support of its decision, the court reasoned "an officer is excused from liability, despite his presence, if the assault is sudden and brief, such that there is no real opportunity to prevent it." <u>Sanders</u> at 13, <u>citing</u>, <u>Cusamano v. Sobek</u>, 604 F.Supp.2d 416, 429 (NDNY 2009).

Mr. Butchino's Failure to Intervene Claim against all individual defendants suffers from the same fatal flaw as the claims of excessive force against Officers Pond, Minogue, and Vassar. The Complaint contains conclusory allegations that the Defendant Officers possessed actual knowledge of the use of excessive force by another officer, but fails to state any facts that support this conclusion. Nevertheless, we address Plaintiff's claims below.

Deposition Testimony from the Defendant Officers establishes that they did not have actual knowledge of any other Officer's use of force. It was Officer Wood's deposition testimony "[a]t the time when I wrote [the supplemental narrative report] I was not exactly

certain what had transpired between Officer Welch and Mr. Butchino in the cell." (R-923, lines 5-7).

Plaintiff's Counsel did not elicit any testimony from Officer Welch regarding the use of force by the other Defendant Officers present in the cell.

Although he was present, Corporal Vassar did not have a clear understanding of the use of force used by any of the Officers in the cell. When asked whether Mr. Butchino sustained a bloody nose from Officer Welch punching him, Cpl. Vassar testified, "I didn't see that at the time, I found out later that he was struck," (R-991, lines 15-19). In fact, Cpl. Vassar could see very little of what was going on in the cell, "I was in a position that I could see the back of my officers." (R-1006, lines 9-10).

When asked whether he observed other people use force, Officer Minogue testified "No, I was not focusing on the other officers, I was focusing on the plaintiff." (R-650, lines 7-12). He further testified that he did not see any punches. (R-651, lines 17-18). Nor did he see Officer Wood make contact with Mr. Butchino's upper thigh area or groin. (R-652, lines 9-11).

Corporal Pond was also present in the cell when the incident occurred. Nevertheless, he did not see Officer Welch punch Mr. Butchino in the face. (R-1232, lines 11-14). Regarding the use of force, Cpl. Pond testified, "I don't recall what force was used, all I remember it was a large pile and we were trying to hold him down – one of us was trying to hold him down and one of us tried to strip the clothes off so he wouldn't attempt to hang himself again; so we could start the constant watch." (R-1233, lines 16-21). When asked specifics about the force allegedly used by Officer Wood, Cpl. Pond testified, "I didn't see what anybody else used, I focused on what I was doing. All I remember everybody was holding him down, I had his feet and I turned my

30

head so I wouldn't get kicked in the face; that's all I recall about it." (R-1233, lines 22-25; R-1234, lines 2-4).

Chief Ritter was present in the Plattsburgh Police Department at the time the incident occurred. He was not in the cell; he came into the booking room from the Sergeant's Office after the altercation started. (R-1380, Booking, 4:47:29 A.M.; R-558, lines 23-25; R-559, line 2). During his deposition, Chief Ritter did not recall any of the events of that night.

Based on the testimony of all of the individual Defendants in this case, they were not aware of any force used by any other Officers against Mr. Butchino. As Plaintiff will be unable to prove that the Defendant Officers had actual knowledge of the force used by another officer, his claim of failure to intervene must fail.

Even if the Defendant Officers were aware of the force that was used, they would not have had a realistic opportunity to intervene. Officer Welch punched Mr. Butchino twice in the face, had the Defendant Officers known this was occurring they would not have been able to intercede as the act was of such a brief and unexpected nature. Similarly, Officer Wood's grabbing Mr. Butchino by the genitals was sudden and brief and there would have been no real opportunity by any of the other Defendant Officers to prevent it. At 4:47:22 A.M., the Officers Welch, Wood, Minogue, and Pond entered the cell with Mr. Butchino. The altercation ended and the Officers retreated from the cell at 4:48:18 A.M.; the entire altercation lasted fifty-six (56) seconds. (R-1380, Cell 4 – Disc 1, 4:47:22 A.M. – 4:48:18 A.M.).

Considering all the evidence, a reasonable jury could not possibly conclude that any of the Defendant Officers possessed actual knowledge of the use of force by another officer, and if they did, they did not have a realistic opportunity to intervene as the force was of a brief and

unexpected nature. Therefore, Plaintiff's claim of failure to intervene must fail as a matter of law as against all Defendant Officers.

### VI.   PLAINTIFF WILL NOT BE ABLE TO OVERCOME DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY

Even if the Court determines that Plaintiff's claims against the Defendant Officers for excessive force and failure to intervene have merit, Defendants may nevertheless be entitled to summary judgment of the claims against them. "[E]ven officers who are found to have used excessive force may be entitled to an extra layer of protection through the qualified immunity doctrine 'from the sometimes hazy border between excessive and acceptable force.'" Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003), quoting, Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled on other grounds, Pearson v. Callahan, 555 U.S. 223, S.Ct. 808, 172 L. Ed. 2d 565 (2009).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kisela v. Hughes, 138 s. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018), quoting, White v. Paul, 137 S.Ct. 548, 551, 196 L. Ed. 2d 463 (2017). The general rule is that police officers are entitled to qualified immunity if "(1) their conduct does not violate clearly established constitutional rights; or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Kerman v. City of New York, 374 F.3d 93, 108 (2d. Cir. 2004).

For a constitutional right to be "clearly established," pursuant to the first element of the qualified immunity test, "courts must consider 'whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the [Second Circuit] supports its existence; and whether, under preexisting law, a defendant official would have reasonably

understood that his [or her] actions were unlawful.'" <u>Cannon v. Wood</u>, No. 19-CV-01332 (GTS), 2013 WL 838299, at *12 (NDNY Jan 22, 2013), <u>report and recommendation adopted</u>, No. (:10-CV-1332 (GTS/RFT), 2013 WL 838294 (NDNY Mar. 6, 2013), <u>quoting</u>, <u>Rodriguez v. Phillips</u>, 66 F.3d 470, 476 (2d Cir. 1995).

The second element of the qualified immunity test establishes that an officer's actions are objectively reasonable if a reasonably competent officer would have acted the same way under similar circumstances. <u>See</u>, <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995), <u>quoting</u>, <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). "The relevant inquiry 'is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Jenkins v. Medert</u>, No. 9:16-CV-1491 (MAD/DJS), 2018 WL 4328823, at *3 (NDNY Sept. 11, 2018), <u>reconsideration denied</u>, No. 9:16-CV-1491 (MAD/DJS), 2018 WL 5283872 (NDNY Oct. 24, 2018), <u>quoting</u>, <u>Stephenson</u>, 332 F.3d 77. Furthermore, in <u>Saucier</u>, the Supreme Court reasoned "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." <u>Saucier</u>, 533 U.S. 205. The Supreme Court in <u>Saucier</u> further established:

> "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." <u>Id.</u>; <u>see also</u>, <u>Hall v. City of Saratoga</u>, No. 1:10-CV-1120 (NAM/CFH), 2013 WL 838284, at *11 (NDNY Mar. 6, 2013).

Finally, it is well settled that the qualified immunity defense "protects all but the plainly incompetent or those who knowingly violate the law." <u>Kisela</u>, 138 S.Ct. 1152, 200 L. Ed. 2d 449, <u>quoting</u>, <u>White</u>, 137 S.Ct. 551, 196 L. Ed. 2d 463. "The question is not what a lawyer would

33

learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct." Young v. Cnty. of Fulton, 160 F.3d 899, 903 (2d Cir. 1998).

> "Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Kisela, 138 S. Ct. 1152, 200 L. Ed. 2d 449, quoting, Plumhoff v. Rickard, 572 U.S. 765, 778, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014).

With this rule of law keenly in mind, the conduct complained of by Plaintiff, assuming all facts to be in his favor, warrants the application of qualified immunity and dismissal.

As examined in Section IV above, the Northern District Court has established that the application of punches to a detainee who was resisting officers was not an unreasonable use of force. See, Hilson v. M. Maltese. Similarly, the Southern District in Rivera v. City of Yonkers, 470 F. Supp. 2d 402 (SDNY 2007), established that an officer's punching of an arrestee who had been aggressive with him was not an excessive use of force, even where the individual sustained a fractured jaw that required surgical repair. It follows, that the prohibition against punching a non-complaint individual is not a clearly established right of which a reasonable person would have known. Considering the fluid and rapidly evolving situation, in which Defendant was aggressive and resisting officers, it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Further, at the very least, officers of reasonable competence could disagree on the reasonableness of Defendant Welch's actions.

The Court has not addressed a situation in which a defendant officer grabbed an individual's genitals where the individual is actively resisting, as such, the prohibition against

such conduct is not a clearly established right of which a reasonable officer would have known. At the very least, officers of reasonable competence could disagree on the reasonableness of Defendant Wood's actions.

Defendants do not dispute that all individuals have the right to be free from excessive force pursuant to the Fourteenth Amendment to the United States Constitution. Officers also have the right to use some degree of physical coercion. Graham, 490 U.S. 396, 109 S. Ct. 1872, 104 L. Ed. 2d 443. Defendants further submit that faced with a person who had been singing about the number of people he had hurt and killed, who had committed and been charged with assault hours before, and who had been resisting their attempts to remove the shorts with which he had attempted to commit suicide, the officers effectively and efficiently achieved their lawful objectives with only a minimal amount of force. Plaintiff cannot defeat the shield of qualified immunity by alleging, without factual support, that the Defendants used objectively unreasonable force against him. The Defendant Officers are therefore entitled to qualified immunity from suit and Plaintiff's claims cannot be maintained and must be dismissed.

## CONCLUSION

For all of the reasons set forth herein, Defendants respectfully request that the Court issue an order, dismissing all of Plaintiff's claims against the Defendants with prejudice, along with such other and further relief which as to the Court seems just and proper.

35

Dated: April 1, 2021

Respectfully submitted,

FITZGERALD MORRIS BAKER FIRTH, P.C.

By:  John D. Aspland, Jr.
Attorneys for Defendants
Bar Roll #512134
68 Warren Street
P.O. Box 2017
Glens Falls, NY 12801
(518) 745-1400

36